```
Approved:  _____/s/_____
           STEVEN J. KOCHEVAR
           Assistant United States Attorney

Before:    THE HONORABLE JUDITH C. McCARTHY
           United States Magistrate Judge
           Southern District of New York
```

```
- - - - - - - - - - - - - - - - - - X     22 mj 1058
                                     :
                                     :     COMPLAINT
UNITED STATES OF AMERICA             :
                                     :     Violations of
    - v. -                           :     18 U.S.C. § 924(c) and
                                     :     21 U.S.C. § 841
                                     :
TEDDY PINERO, JR,                    :
                                     :     COUNTY OF OFFENSE:
                                     :     WESTCHESTER
                  Defendants.        :
                                     :
- - - - - - - - - - - - - - - - - - X
```

SOUTHERN DISTRICT OF NEW YORK, ss.:

MICHAEL FLANAGAN, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations, United States Department of Homeland Security ("HSI"), and charges as follows:

## COUNT ONE

(Possession of a Controlled Substance with Intent to Distribute)

1. On or about February 1, 2022, in the Southern District of New York, TEDDY PINERO, JR, the defendant, intentionally and knowingly did possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

2. The controlled substance involved in the offense was mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C); Title 18, United States Code, Section 2.)

## COUNT TWO

(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

    1.   On or about February 1, 2021, in the Southern District of New York, TEDDY PINERO, JR, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the possession with intent to distribute a controlled substance charged in Count One of this Complaint, knowingly did use and carry a firearm, and in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying and possession of a firearm.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

   The bases for my knowledge and for the foregoing charges are, in part, as follows:

    1.   I am a Special Agent with Homeland Security Investigations, U.S. Department of Homeland Security ("HSI") since September of 2020. Before joining HSI, I spent approximately one year as a patrolman with the New Jersey Transit Police Department, and, prior to that, approximately two years as a patrolman at the Federal Reserve Police Force. During my time in law enforcement, I have participated in numerous narcotics investigations. I base this affidavit on that personal experience, my participation in this investigation, my conversations with other law enforcement officers, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during the investigation. Where the contents of documents or the actions, statements, or conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

    2.   Based on my communications with officers from the Westchester County Police Department ("WCPD"), and my review of records, I have learned, among other things, the following, in substance and in part:

    a. On or about February 1, 2022, a law enforcement officer employed by the WCPD (the "WCPD Officer") in an unmarked police vehicle observed a black Ford Edge with New

York license plate number KKU8135 (the "Vehicle") traveling northbound on the Sprain Brook Parkway in the vicinity of Interstate 287.  The WCPD Officer observed the Vehicle traveling at approximately sixty-eight to seventy miles per hour, in excess of the posted speed limit of fifty-five miles per hour.  The WCPD Officer observed the Vehicle change lanes and accelerate to approximately seventy-one miles per hour.

      b. The WCPD Officer initiated a traffic stop of the Vehicle for a violation of the New York Vehicle and Traffic Law ("VTL") § 1180 concerning speeding.  The traffic stop occurred on the exit ramp for Exit 4 off the Taconic Parkway for Route 117 in or around the town of Mount Pleasant.

      c. The WCPD Officer approached the Vehicle and observed the driver, later identified as the defendant, TEDDY PINERO, JR, and a minor child in a rear passenger seat.  PINERO provided the WCPD Officer with a New York State identification card and a Puerto Rico driver's license.  PINERO told the WCPD Officer, in sum and substance, that the Vehicle belonged to his brother, that he was driving to see a friend, an older guy, and that his destination was about forty-five minutes away on Oak Street at Exit 21.  The WCPD Officer observed that PINERO provided clarifying information about PINERO's Puerto Rican driver's license.  For example, PINERO stated, in sum and substance, that he lives in New York and Puerto Rico and travels back and forth.  The WCPD Officer observed that PINERO's answers to questions regarding PINERO's destination and the purpose of his trip were less clear and more vague.  For example, PINERO did not provide the name of his friend or the amount of time he intended to spend at his destination.

      d. The WCPD Officer asked for PINERO's consent to search the Vehicle.  The WCPD Officer asked PINERO, in sum and substance, if there was anything illegal in the Vehicle.  PINERO shook his head.  The WCPD Office asked, in sum and substance, if there were any drugs in the Vehicle.  PINERO stated, in sum and substance, that there was nothing illegal and he just had his son.  The WCPD Office asked, in sum and substance, if there were any firearms in the Vehicle.  PINERO looked away from the WCPD Officer and stated, in sum and substance, no guns.  The WCPD Officer asked, in sum and substance, if there were large quantities of United States currency in the Vehicle.  PINERO denied, in sum and substance, that there were any large quantities of United States currency in the Vehicle.  PINERO provided consent to search the

Vehicle, stating, in sum and substance, yeah and go ahead search it.

    e. The WCPD Officer and a colleague searched the Vehicle and located an aftermarket, electronically controlled hidden compartment in the center console area of the Vehicle (the "Trap").

    f. Inside the Trap, the WCPD Officer and his colleagues located a medium-sized plastic bag containing approximately seventy smaller plastic bags containing a white powdery substance (the "Package"). They also located a North American Arms 22 Magnum firearm (the "Firearm"). The Firearm was wrapped in a rag, which was inside the same type of medium-sized plastic bag as the medium-sized plastic bag used in the Package. The following image shows the Package after it was removed from the Trap and placed on top of the Trap:



The following image shows the rag and its contents after it had been unwrapped:



  g. The WCPD Officer and his colleagues arrested PINERO and took him to WCPD Headquarters.  At the time of his arrest, law enforcement officers recovered, from one of PINERO's coat pockets, six plastic bags, consistent with the type of medium-sized plastic bag that was used in the Package and that the Firearm and rag had been inside.

  h. At WCPD Headquarters, a canine trained in narcotics detection, "Liberty",[1] was introduced to the Package

---

[1] Liberty was acquired by the WCPD in or about October 2020. Liberty completed a ten-week basic course of instruction in narcotics detection at the Westchester Police Academy in

and gave a positive indication for the presence of a narcotic odor.

      i. At WCPD Headquarters, the Package field-tested positive for cocaine.

3. Based on my communications with law enforcement officers with the Drug Enforcement Administration ("DEA"), I know the Package weighed, in total, approximately twenty grams.

4. Based on conversations with another Special Agent at HSI, I know that, at WCPD Headquarters, after law enforcement agents informed PINERO that they wished to interview him and would speak with him soon, but without asking PINERO a specific question, PINERO stated, in sum and substance, that he did not know what the big deal was and that the gun was broken and did not work.

5. Based on records from the New York Department of Motor Vehicles, I know that the Vehicle is registered in the name of Ruben Pinero, who I understand to be the brother of TEDDY PINERO, the defendant. Based on conversations with law enforcement officers, I know that an individual ("Individual-1") who came to WCPD Headquarters to pick up the minor child who was riding in the Vehicle at the time of PINERO's arrest stated, in sum and substance, that she was PINERO's wife, that the Vehicle was PINERO's brother's, and that PINERO primarily drove the Vehicle.

6. Based on my training and experience, I know that when individuals possess small amounts of cocaine in individual packages, this indicates that the individuals are engaged in the distribution of cocaine.[2] I also know that when an individual stores a firearm in the same location as narcotics, this

---

Valhalla, New York.  In or about July 2021, the WCPD Officer and Liberty were certified by the New York State Division of Criminal Justice Services as a Police Narcotics Detection Canine Team for cocaine, crack cocaine, methamphetamines, ecstasy, and heroin.  Liberty will positively alert her handler in the presence of these narcotics odors by sitting.  Liberty is used regularly in narcotics detection and has participated in numerous seizures of narcotics and United States currency.  Liberty has also been used for narcotics detection by other federal, state, and local law enforcement agencies.

[2] During a post-arrest interview with law enforcement officers, PINERO claimed, in sum and substance, that the narcotics recovered from the Trap were for his personal use.

indicates that the individual is engaged in the distribution of narcotics and that the individual possesses the firearm in connection with their narcotics distribution activities.  In addition, when a vehicle contains an aftermarket, hidden compartment in a location that is not typically used to store items, such as the Trap in the Vehicle, and when such a compartment contains narcotics and a firearm, this indicates that the individual operating the vehicle is engaged in the distribution of narcotics and has possessed the firearm in connection with drug trafficking activities.

WHEREFORE, the deponent respectfully requests that TEDDY PINERO, JR, the defendant, be imprisoned or bailed, as the case may be.

/s/ Michael Flanagan by JCM with permission
_____
SPECIAL AGENT MICHAEL FLANAGAN
HOMELAND SECURITY INVESTIGATIONS
U.S. DEPARTMENT OF HOMELAND SECURITY

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rule of Criminal Procedure 4.1, this

<u>1st</u> day of February, 2022

_____
THE HONORABLE JUDITH C. McCARTHY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK